*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0125p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

GEORGE LINDSLEY,

        *Plaintiff-Appellant,*

    *v.*

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant-Appellee.*

No. 08-3738

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 07-00078—Michael R. Barrett, District Judge.

Argued: March 10, 2009

Decided and Filed: March 31, 2009

Before: BOGGS, Chief Judge; GILMAN and ROGERS, Circuit Judges.

—————————————

**COUNSEL**

**ARGUED:** Mark R. Naegel, Sr., Cincinnati, Ohio, for Appellant. Bill Thomas, OFFICE OF THE REGIONAL CHIEF COUNSEL, SOCIAL SECURITY ADMINISTRATION, Chicago, Illinois, for Appellee. **ON BRIEF:** Mark R. Naegel, Sr., Cincinnati, Ohio, for Appellant. Bill Thomas, OFFICE OF THE REGIONAL CHIEF COUNSEL, SOCIAL SECURITY ADMINISTRATION, Chicago, Illinois, for Appellee.

—————————————

**OPINION**

—————————————

RONALD LEE GILMAN, Circuit Judge. George Lindsley sought disability-insurance benefits under Title II of the Social Security Act (SSA), claiming that he is unable to work due to a fused right wrist, depression, and bursitis. After an Administrative Law Judge (ALJ) and the Social Security Appeals Council denied his claim for benefits, he filed suit in federal district court, arguing that the ALJ's decision was not supported by substantial evidence because the testimony of the vocational expert conflicted with information found

in the Dictionary of Occupational Titles (the DOT). The district court upheld the ALJ's determination. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.     Statutory and regulatory background

To receive disability benefits under the SSA, an applicant must be "disabled" as defined by the Act. Individuals are "disabled" under the SSA if they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

Moreover,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The preceding statutory requirements have been distilled into a regulatory framework that sets forth a five-step sequential analysis used to determine whether a particular applicant for disability benefits is indeed "disabled." This court has summarized the regulatory framework as follows:

> The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education,

> past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (citations omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(i)–(v).

This appeal ultimately hinges on the ALJ's determination with respect to the fifth step. Under that step, ALJs are permitted to consider "'reliable job information' available from various publications" as evidence of the claimant's ability to do other work "that exists in the national economy." S.S.R. 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) (citing 20 C.F.R. §§ 404.1566(d) and 416.966(d)). Such publications include the DOT, which provides "information about jobs (classified by their exertional and skill requirements) that exist in the national economy." 20 C.F.R. § 416.969. ALJs are also authorized to consider the testimony of so-called "vocational experts" (VEs) as a source of occupational evidence. S.S.R. 00-4p, 2000 WL 1898704, at *2.

On occasion, a VE's testimony conflicts with the information set forth in the DOT. In an effort to insure that such actual or apparent conflicts are addressed, the Social Security Administration has imposed an affirmative duty on ALJs to ask the VE if the evidence that he or she has provided "conflicts with [the] information provided in the DOT." S.S.R. 00-4p, 2000 WL 1898704, at *4. ALJs must also "obtain a reasonable explanation for . . . apparent conflict[s]" if the VE's evidence "appears to conflict with the DOT." *Id.*

**B.      Procedural background**

Lindsley applied for disability-insurance benefits under Title II of the SSA in February 2001. He claimed to be disabled as of October 1997 due to a fused right wrist, depression, and bursitis. In June 2001, a regional commissioner of the Social Security Administration determined that Lindsley was not entitled to disability benefits. That determination was subsequently affirmed by the State Disability Determination Service.

In February 2003, Lindsley continued to pursue his claim before an ALJ, who allowed Lindsley additional time to collect further medical evidence in support of his

allegations. Lindsley took this opportunity to amend his application by claiming that his disability began in June 2000, not in October 1997 as he had originally contended.

The administrative hearing resumed in May 2003. Lindsley, a VE, and two other witnesses testified. At the conclusion of the hearing, the ALJ determined that Lindsley was not disabled as defined by the SSA because he could perform a significant number of jobs in the national economy.

Lindsley pressed on. He requested that the Appeals Council review the ALJ's adverse determination. The Appeals Council denied his request. Lindsley then filed a civil action against the Commissioner of Social Security in federal district court, seeking judicial review of the ALJ's decision. The Commissioner and Lindsley subsequently filed a joint motion to remand the case to an ALJ for a new hearing in order to "further evaluate and clarify Plaintiff's residual functional capacity and the jobs cited by the vocational expert."

A remand hearing was held before an ALJ in December 2005. Robert Breslin, a different VE than the one who previously appeared, testified at the new hearing. Breslin said that someone having Lindsley's abilities could perform the job of a light, unskilled production inspector. Elaborating on this job description, Breslin explained that

> production inspectors, at the unskilled level, would typically inspect in a standing posture sometimes at a production line that moves or sometimes at a table or in some sort of a cell, they'd be inspecting products and packaging, visualizing [sic] inspecting products and packaging, not normally doing any precision measurement because those jobs are more skilled and aren't reflected in the numbers that I gave. So they're typically visual inspection jobs of products or subassemblies weighing less than 20 pounds. And the number of products would be, you know, virtually anything that comes off a production line is visually inspected.

VE Breslin then said that he had personally watched light, unskilled production inspectors at work. According to Breslin, there were 270,000 such jobs in the national economy. Breslin further opined that there was no discrepancy between his opinion and the DOT.

Based upon this testimony, the ALJ made no further inquiries regarding potential conflicts between the DOT and Breslin's opinion. The ALJ found that Lindsley was able to perform the job of a light, unskilled production inspector, meaning that Linsdley was not

suffering from a disability as defined by the SSA.  That determination became final after the Appeals Council denied a request for further review in December 2006.

Lindsley once again filed suit against the Commissioner in the federal district court. The magistrate judge recommended affirming the ALJ's denial of benefits on the basis that substantial evidence supported the ALJ's determination that Lindsley did not satisfy the SSA's statutory definition of "disabled."  In addition to summarizing VE Breslin's testimony, the magistrate judge observed that "a review of the DOT reveals hundreds of inspector jobs" that were consistent with Lindsley's abilities.  The district court adopted the magistrate judge's recommendation to deny Lindsley's application for disability benefits. This appeal followed.

## II. ANALYSIS

### A.     Standard of review

We exercise de novo review of district court decisions in Social Security cases. *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005).  The Commissioner's conclusions must be affirmed unless we determine that the ALJ failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).  This means that administrative findings

> are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  The substantial evidence standard presupposes that there is a "zone of choice" within which the Secretary may proceed without interference from the courts.  If the [administrative] decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted).

**B.      Substantial evidence supports the ALJ's determination**

### 1.      *There was no conflict between the VE's testimony and the DOT*

Lindsley's first argument is that because the DOT does not list a specific occupational classification called "Production Inspector" or "Inspector, Production," there is a conflict between the DOT and VE Breslin's testimony that Lindsley could perform the job of a "light, unskilled production inspector." The ALJ's purported failure to resolve this conflict, in Lindsley's view, means that the ALJ disregarded the applicable regulation by failing to "obtain a reasonable explanation for . . . apparent conflict[s]." *See* S.S.R. 00-4p, 2000 WL 1898704, at *4.

But Lindsley has not identified any apparent, let alone actual, conflict between the DOT and the testimony of VE Breslin. Instead, Lindsley repeatedly emphasizes that the occupations listed in the DOT do not include the job description of a "light, unskilled production inspector." Lindsley has failed, however, to cite any authority establishing that a conflict between the DOT and a VE's testimony exists simply because an occupation described by the VE does not specifically appear in the DOT.

Indeed, there is ample authority supporting the contrary conclusion. The fact that VE Breslin's description of a production-inspector job does not align perfectly with the DOT's listed occupation titles should not be surprising given that "[t]he DOT contains information about most, *but not all*, occupations." S.S.R. 00-4p, 2000 WL 1898704, at *2 (emphasis added). Moreover, as the magistrate judge pointed out in his Report and Recommendation, the DOT's job classifications are collective descriptions of "occupations" that can encompass numerous jobs. *Id.* ("The term 'occupation,' as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs."); *see also* S.S.R. 96-9p, 1996 WL 374185, at *10 n.4 (S.S.A. July 2, 1996) ("An 'occupation' refers to a grouping of numerous individual 'jobs' with similar duties. Within occupations (e.g., 'carpenter') there may be variations among jobs performed for different employers (e.g., 'rough carpenter').").

The fact, therefore, that a VE and the DOT might use different terminology to describe employment positions does not establish that a conflict exists between these sources

of evidence.  Lindsley has pointed to no legal authority or fact in the administrative record indicating otherwise.  His first argument is therefore without merit.

### 2.      *The ALJ did not fail to conduct the proper inquiry regarding potential conflicts*

Lindsley's second objection is that the ALJ failed to comply with S.S.R. 00-4p by, in essence, asking VE Breslin the wrong question.  The ALJ asked Breslin whether there was any "*discrepancy* between your opinions and the DOT standards."  (Emphasis added.) Lindsley maintains, however, that the ALJ should have instead asked Breslin whether "the evidence he . . . provided *conflicts* with information provided in the DOT."  *See* S.S.R. 00-4p, 2000 WL 1898704, at *4 (emphasis added).  Using S.S.R. 00-4p's precise language, according to Lindsley, would have "compelled [Breslin] to reveal that the DOT does not classify jobs or occupations as 'light unskilled production inspector' . . . ."

Lindsley correctly points out that the Social Security Administration imposes an affirmative duty on ALJs to ask VEs if the evidence that they have provided "conflicts with the information provided in the DOT."  S.S.R. 00-4p, 2000 WL 1898704, at *4.  He also properly observes that this duty was triggered in the present case because VE Breslin proffered evidence during the administrative hearing in the form of expert testimony.  In particular, Breslin testified that approximately 270,000 production-inspector jobs exist in the national economy that a person with Lindsley's residual functional capacity could perform.

But Lindsley has failed to show how the ALJ erred.  There is little doubt that the ALJ satisfied his obligation under S.S.R. 00-4p by asking VE Breslin about any apparent discrepancies between the information provided by the DOT and that which Breslin himself presented.  *See* S.S.R 00-4p, 2000 WL 1898704, at *4.  Breslin responded that there were no such discrepancies.  We do not see a material difference between asking if there are any "discrepancies" and asking whether there are any "conflicts."  Nor has Lindsley identified any authority requiring ALJs to conduct a mechanical recitation of the precise language in S.S.R. 00-4p for the purpose of determining whether there are any inconsistencies.

There is yet another way to view Lindsley's second argument.  Stripped of its technical veneer, Lindsley's claim amounts to the contention that the ALJ did not interrogate

VE Breslin with sufficient rigor about potential conflicts between Breslin's views and the DOT. But Breslin credibly testified that there was no such conflict. And Lindsley was afforded a full opportunity to cross-examine Breslin. The ALJ had no duty under S.S.R. 00-4p to interrogate him further. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct."). Lindsley's second argument therefore lacks merit.

### 3.    *The district court's alleged error in adopting the magistrate judge's independent finding of fact was harmless*

Finally, Lindsley argues that the magistrate judge erred by independently reviewing the contents of the DOT in support of his recommendation that the ALJ's determination regarding disability should be affirmed. The magistrate judge pointed out that "a review of the DOT reveals hundreds of inspector jobs," going on to note that many of the jobs were consistent with Lindsley's abilities. This observation purportedly violates the long-standing principle of administrative law that requires reviewing courts to "judge the propriety of [an administrative] action solely by the grounds invoked by the agency." *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Lindsley maintains that the district court erred by adopting the magistrate judge's recommendation.

Whether the magistrate judge's review of the DOT was impermissible is far from clear. The Commissioner argues that consulting the DOT was necessary to address Lindley's contention that a conflict existed between VE Breslin's testimony and the information found in the DOT. We need not resolve this issue because, even assuming *arguendo* that the magistrate judge indeed erred, the error would be harmless. This is due to Breslin's uncontradicted, credible testimony, which remains a "source of occupational evidence." *See* S.S.R. 00-4p, 2000 WL 1898704, at *2. Breslin's testimony provides substantial evidence supporting the ALJ's determination that Lindsley did not suffer from a statutory disability. Lindsley has cited no authority undermining the ALJ's reliance on such testimony. We therefore find no basis to set aside the ALJ's determination that Lindsley was not disabled pursuant to the SSA.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.