NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0424n.06

Case No. 13-6024

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 11, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOANIE WOLFENBARGER DYER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| SOCIAL SECURITY ADMINISTRATION, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |
| _____/ | ) | |

Before: Merritt, Cook, and Stranch, Circuit Judges.

**MERRITT, Circuit Judge.** Plaintiff Joanie Wolfenbarger Dyer appeals from the district court decision upholding the Commissioner of Social Security's denial of her application for disability insurance and supplemental security income. Dyer claims that the administrative law judge failed to give adequate weight to her treating physician's opinion about her ability to work and that the administrative law judge gave a hypothetical to the vocational expert that did not adequately reflect Dyer's physical and mental limitations. After reviewing the administrative record, we hold that the denial of benefits was based on substantial evidence. We therefore affirm the judgment of the district court.

**I. Factual and Procedural History**

Dyer filed applications for disability insurance benefits and social security income in December 2009, alleging she became disabled on November 1, 2008.[1]  A hearing was conducted before an administrative law judge on March 15, 2011, at which Dyer, her attorney and a vocational expert appeared.  The administrative law judge issued an opinion on March 24, 2011, denying her applications.[2]  The Appeals Council denied her request for review, leaving the administrative law judge's decision as the final decision.  Dyer then sought judicial review and the district court affirmed the Commissioner's decision.  *Dyer v. Colvin, Acting Comm'r of Soc. Sec.,* No. 12-0098 (E.D. Ky. May 28, 2013).

The administrative law judge applied the five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a).  At step one, the administrative law judge determined that Dyer had not engaged in substantial gainful activity since November 1, 2008, the alleged onset disability date.  At step two, the judge found that Dyer had a combination of severe impairments, including a history of coronary artery disease (post-stenting), carotid artery stenosis without infarction, chronic obstructive pulmonary disease, acromioclavicular joint crepitus of the right shoulder, degenerative disc disease of the cervical spine, bilateral carpal tunnel release (post-surgery), bipolar disorder, anxiety disorder with post-traumatic stress disorder and pain

---

[1] Dyer filed prior applications for disability insurance and social security income in 2006 that were denied.  These applications are not at issue in this appeal.

[2] Dyer was born on November 1, 1962, and was 48 years old at the time of the administrative decision on her claims.  When the Social Security Commission decides whether a claimant is disabled, it considers her chronological age in combination with residual functional capacity, education, and work experience.  In determining the extent to which age affects a claimant's ability to adjust to other work, the Commission considers advancing age to be an increasingly limiting factor in the claimant's ability to make such an adjustment.  *See* 20 C.F.R. § 404.1563.  Dyer is now 51 years old.  Age 50 serves as a demarcation line between "younger person" (less than 50 years of age) and "person closely approaching advanced age" (50–54 years of age) for purposes of analyzing disability claims.  *Id*.  As a person closely approaching advanced age, the Commission will consider that her age along with severe impairments and limited work experience may seriously affect her ability to adjust to other work.  But, in order to have her case considered a "closely-approaching-advanced-age" case, Dyer will have to refile her claim and engage the administrative process anew.

disorder. ALJ Decision at 4. At step three, the administrative law judge found that Dyer did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.* at 8. Because the administrative law judge found that Dyer did not have a listed impairment, he went on to determine her residual functional capacity. At steps four and five, he found that Dyer retained the residual functional capacity to perform light work,[3] including her past work as a utility and assembly line inspector, with certain limitations on the frequency of lifting and carrying, limiting standing or walking to 6 hours in an 8-hour workday, limiting sitting to 6 hours in an 8-hour workday, limiting the frequency of pushing or pulling with her right arm, limited climbing of stairs or ramps, no climbing on ladders, ropes or scaffolds, only occasionally balancing, kneeling, crouching or crawling, limitations on the amount of overhead reaching with both arms and avoiding concentrated exposure to extremes in the environment, such as temperatures, vibration or air-borne contaminants and fumes. *Id.* at 10.

In addressing Dyer's mental impairments, the administrative law judge found she would be able to understand, remember and carry out simple work instructions and procedures requiring brief learning periods, that she could sustain focus, effort and pace for simple work tasks requiring little independent judgment and involving minimal variation, that she was able to interact as needed with supervisors and coworkers but should interact with the public only occasionally and that she could adapt adequately to situational conditions and changes with reasonable support and structure. *Id.* at 10-11.

Based on Dyer's medical record, her testimony and the opinion of the vocational expert, the administrative law judge found that she could perform her past relevant work with the listed

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

limitations. The judge went on to find that she could also perform other jobs such as housekeeper, gate keeper and assembler and other work existing in significant numbers in the national economy. Accordingly, the administrative law judge made a finding that Dyer is "not disabled" and not entitled to disability insurance benefits. *Id*. at 15.

**I.**

Dyer raises three issues on appeal: (1) the administrative law judge did not give proper weight to the opinion of her treating physician; (2) the administrative law judge gave a hypothetical to the vocational expert with an inaccurate residual functional capacity; and (3) the vocational expert failed to resolve inconsistencies between the work-related functions of the identified jobs Dyer could perform and their definitions in the Dictionary of Occupational Titles. On review, we are limited to determining whether the Commissioner's decision was supported by substantial evidence and was made according to proper legal standards. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

**A.  Weight Given Dr. Dunaway's Opinion**

Dyer's appeal focuses mainly on the discrepancies between the opinion of one of her treating physicians, Dr. Dunaway, and the findings of the administrative law judge as to Dyer's physical limitations. When according weight to the opinion of a treating physician, the opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). However, the treating physician's opinion can be properly discounted if there is substantial medical evidence to the contrary or the physician provided a "conclusory opinion that claimant is unable to work." *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x

431, 433 (6th Cir. 2012). For example, in *Tate* we affirmed an administrative law judge's decision not to give controlling weight to a treating physician's opinion where that opinion was inconsistent with other evidence in the record or the assessment relied on subjective symptoms without support of objective findings. *Id*. The administrative law judge must give "good reasons" for the weight—or lack of weight—given a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). The administrative law judge must consider specific factors to determine what weight the treating physician's opinion will be given, and the judge's "good reasons" must be supported by the evidence in the record. *Wilson*, 378 F.3d at 544-46.

Dr. Dunaway opined, based on Dyer's cervical spine MRI, that Dyer could lift less than 10 pounds, stand and walk less than two hours, and sit about two hours. Dr. Dunaway stated that Dyer must change positions every 10-15 minutes when sitting and 5-10 minutes when standing. He opined that Dyer would need to shift at will from sitting or standing and that she would need to lie down twice in a normal work day of 8 hours. In contrast, the administrative law judge found that she could carry 10 pounds frequently and 20 pounds occasionally, and sit or stand and walk, depending on the job, for 6 hours out of an 8-hour workday. Dyer argues that the administrative law judge failed to give Dr. Dunaway's opinion proper weight in determining her residual functional capacity.

In support of the decision to give little weight to Dr. Dunaway's opinion, the administrative law judge acknowledged that the opinions of Dyer's treating physicians are entitled to "great weight unless there is persuasive contradictory evidence. . . . [but little] weight is accorded the opinions of these physicians inasmuch as they are inconsistent with the weight of the medical evidence of record and her activities of daily living." ALJ Decision at 13-14. The

administrative law judge went on to detail the reasons why he did not give much weight to Dr. Dunaway's opinion and to explain why he gave other opinions more weight.

The administrative law judge gave considerable weight to nontreating, consultative examiner Dr. Beard in regard to Dyer's residual functional capacity assessment. *See Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436-38 (6th Cir. 2010) (administrative law judge gave considerable weight to a nontreating physician's assessment that was consistent with objective medical evidence such as MRIs and with the claimant's self-reported daily activities). Dr. Beard found no evidence of hypertensive or diabetic retinopathy and no organ damage due to diabetes mellitus. Dr. Beard also found her chronic obstructive pulmonary disease, restrictive pulmonary disease and dyspnea after exertion to be "mild" or "very mild." He found mild tenderness or mild pain in the cervical spine and the shoulder joint. He found her wrists nontender and nonswollen. Her grip strength was only "mildly diminished" and she was able to make a fist, pick up a button and coins with either hand, write with her dominant hand with no difficulty and had no intrinsic hand atrophy or sensory loss from carpal tunnel syndrome. She could stand on one leg at a time with no difficulty and was able to walk on heels and toes. Dr. Beard noted that Dyer is limited in terms of repetitious or prolonged use of the hands, repetitive bending and heavy lifting or carrying. ALJ Decision at 12-13.

Dyer's cardiac and vascular system testing likewise show full revascularization after angioplasty and a stenting procedure, a normal EKG and blood pressure within an acceptable range with medication.

The administrative law judge also did not give controlling weight to Dr. Dunaway's opinion because it was inconsistent with the evidence about her activities of daily living. He related at length in his decision the "wide range of varied activities of daily living" engaged in by

Dyer according to her own testimony, citing Dyer's ability to take care of her personal hygiene and grooming, cooking, cleaning, laundry, driving, shopping, visiting with friends and family, caring for her ill mother, and taking care of her pet bird. ALJ Decision at 13. He found that Dyer

> is trying to make her symptoms sound significantly more severe than they actually are. The . . . symptoms alleged by the claimant [are] significantly greater than that which can be reasonably anticipated based upon the objective physical findings. The medical evidence simply fails to establish the presence of . . . impairment that could reasonably be expected to cause symptoms of the great degree alleged.

*Id*. at 12. The judge concluded that "[i]t appears that the claimant has exaggerated her physical limitations." *Id*.

Dyer counters that undertaking these activities causes her to experience "days of pain" and further restriction of movement and that there are times when her sister must help her wash her hair. She also relates that family members help her with "most" household chores. Appellant's Br. at 21. We have affirmed findings in similar situations, holding that daily activities such as those reported by Dyer herself can constitute substantial evidence in support of a finding that a claimant is not disabled. *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990).

Dyer also challenges the administrative law judge's findings of her mental status and capabilities, particularly her ability to remember instructions. While one examining physician, Dr. Lima, noted that Dyer would have difficulty remembering simple instructions, there is substantial evidence in the record from other mental health professionals that Dyer could remember simple instructions requiring brief learning periods and instructions that were repetitive in day-to-day situations.

The administrative law judge carefully summarized the results of all of Dyer's medical records. He explained why each of her stated impairments—back, neck and shoulder pain, neurologic damage from degenerative disc disease, pulmonary disease, coronary artery disease, diabetes, carpal tunnel syndrome and mental impairments, including depression—do not meet, alone or in combination, a listed impairment and why Dr. Dunaway's opinion is inconsistent with these findings. The reasons given are well supported on the record.

The objective medical evidence simply fails to support Dr. Dunaway's opinion. Dr. Dunaway's own treatment records do not support the extremely restrictive limitations on Dyer's work-related activities he gave in his opinion. For example, after diagnosing Dyer with cervical stenosis in 2007, later examinations noted full range of motion in her shoulders, fairly strong and symmetric grip strength with normal sensation and back flexibility and bending near normal. These findings are similar to those made by Dr. Beard, the consultative physician to whose opinion the administrative law judge gave considerable weight.

An administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records. *See, e.g., Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376, 379-80 (6th Cir. 2013). Substantial evidence supports the administrative law judge's finding that Dr. Dunaway's proposed severe limitations were inconsistent with the evidence in the record and the treating physician rule was not violated.

## B.   The Vocational Expert's Testimony

Dyer contends that the hypothetical question posed to the vocational expert did not accurately describe her residual functional capacity and that it was therefore error for the

Commissioner to rely upon his testimony.[4]  For a vocational expert's response to a hypothetical to constitute substantial evidence, "each element of the hypothetical must accurately describe the claimant."  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  Consequently, we must determine if the information in the hypothetical question posed to the vocational expert by the administrative law judge was accurate.

After detailing the medical evidence entered by Dyer's treating physicians and the consultative physicians, the administrative law judge based Dyer's residual functional capacity on the opinions of the consultative examiners, the claimant's activities of daily living and the opinion of Dyer's treating cardiologist, Dr. Lohman.  ALJ Decision at 14.  For all the reasons given in the preceding section, the administrative law judge did not err in determining Dyer's residual functional capacity as it was based on the medical evidence in the record.  Accordingly, the hypothetical posed to the vocational expert properly took into account the well-supported findings by the administrative law judge concerning Dyer's functional limitations.  A vocational expert's testimony in response to an accurate hypothetical represents substantial evidence that

---

[4] The following hypothetical was given to the vocational expert:

> [T]he claimant has residual functional capacity to perform light exertional work activities.  That [means she may] occasionally lift or carry 20 pounds, frequently 10 pounds; stand or walk a total of six hours in an eight-hour workday; sit a total of six hours in an eight-hour workday; no more than frequent push/pull with right upper extremity; only occasionally climbing . . . stairs or ramp, never ladder or rope; only occasional balancing, kneeling, crouching, or crawling; no more than frequent handling bilaterally—and handling is defined, Ms. Taber, as seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands—no more than frequent overhead reaching bilaterally; she should avoid concentrated exposure to extreme cold, heat, humidity, full-body vibration, fumes, odors, dust, or gases, and all hazards such as unprotected heights and dangerous machinery.  She also suffers with mental impairments, however, she would be able to understand, remember, and carry out simple, repetitive work instructions and procedures requiring brief learning periods; sustain concentration and effort and pace for simple work tasks requiring little independent judgment and involving minimal variations, and doing so at a prerequisite schedules of work and breaks. [She would] be able to interact frequently as needed with supervisors and coworkers sufficiently for task completion yet requiring no more than occasional interaction with the general public, and she'd be able to adapt adequately to situational conditions and changes with reasonable supported structure.

Transcript of Hearing before Administrative Law Judge Don C. Paris at 40-41 (Mar. 15, 2011).

the claimant has the vocational qualifications to perform specific jobs. *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). The vocational expert testified that based on the hypothetical given, Dyer can perform her past relevant work and a significant number of jobs in the economy. ALJ Decision at 14-15.

## C. Dictionary of Occupational Titles

Dyer briefly argues that the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles. Specifically, Dyer contends that the descriptions in the Dictionary of Occupational Titles of the jobs identified by the vocational expert all require the ability to remember and carry out "detailed" instructions, but the hypothetical given by the administrative law judge specified that the job requirements entail only "simple" instructions. The administrative law judge asked the vocational expert at the hearing if her testimony was consistent with the Dictionary of Occupational Titles and she answered yes. Dyer's counsel did not object or otherwise ask for any clarification or follow up to this single question about the Dictionary of Occupational Titles and no further discussion occurred. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (where the administrative law judge has already fulfilled his obligation to ask the vocational expert whether his testimony conflicts with the Dictionary of Occupational Titles, the judge need not independently investigate conflicts in vocational expert's testimony not brought to the judge's attention).

In any event, the Dictionary of Occupational Titles defines the jobs assigned to persons with Dyer's educational level (a General Equivalency Diploma) to require the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and to deal] with problems involving a few concrete variables in or from standardized

situations."   Dictionary of Occupational Titles 706.684-030.   Dyer cites no authority to demonstrate that this definition is inconsistent with the hypothetical given to the vocational expert that stated that Dyer was capable of understanding, remembering and carrying out simple instructions.  We concede that the phrase "detailed but uninvolved" is confusing, but it does not contradict the hypothetical.

For the foregoing reasons, the judgment of the district court is affirmed.