NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0302n.06

No. 19-6146

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

REGINALD A. BROWN,               )
                                 )          **FILED**
        Plaintiff-Appellant,     )          May 28, 2020
                                 )          DEBORAH S. HUNT, Clerk
v.                               )
                                 )   ON APPEAL FROM THE
COMMISSIONER OF SOCIAL SECURITY, )   UNITED STATES DISTRICT
                                 )   COURT FOR THE WESTERN
                                 )   DISTRICT OF TENNESSEE
        Defendant-Appellee.      )
                                 )

BEFORE:    GRIFFIN, THAPAR, and READLER, Circuit Judges.

   **CHAD A. READLER, Circuit Judge.**   Reginald Brown, a former recipient of

Supplemental Security Income (or SSI) under Title XVI of the Social Security Act, appeals an

Administrative Law Judge's determination that he ceased to be totally disabled. In particular,

Brown takes issue with the ALJ's decision not to favor the opinion of Brown's treating physician

over the many other medical consultations that showed improvement in his condition. A federal

magistrate judge affirmed the ALJ's decision. Because the ALJ's decision to terminate Brown's

benefits complied with governing regulations and was supported by substantial evidence, we

**AFFIRM** the judgment of the district court.

## I. BACKGROUND

   Brown was granted SSI in 2007 after an ALJ appointed by the Commissioner of the Social

Security Administration concluded that Brown was unable to work due to a right inguinal hernia,

residuals of left hernia surgery, and scoliosis. Following treatment of Brown's injuries, the

Commissioner, over Brown's objection, later determined that Brown's disability ended as of May 2015. Significant medical evidence supported that conclusion. Two ultrasounds, three and six years after Brown's surgery, showed no recurrent hernia, a result confirmed by a later abdominal sonogram. Subsequent examinations by three private physicians, Drs. Mohan, Hyden, and Gravenor, showed full strength and range of motion in Brown's back and found no objective evidence of disability. Further examinations by state agency medical consultants Drs. Gulbenk and Robinson reached similar findings, with Dr. Gulbenk in particular noting that Brown takes no prescription pain medication despite his claims of debilitating pain. Yet another physician, Dr. Kaplan, noted that Brown could return to work with no restrictions.

The lone physician to find objective medical evidence of Brown's disability was Dr. Austin. She examined Brown several times in 2015 and 2016. Each time, she found a painful range of motion in all directions in Brown's spine and partial weakness in his hands and arms. She concluded that Brown's condition rendered him unable to lift more than ten pounds. Confusingly, however, Austin's examination notes also indicated that Brown could potentially pick up objects weighing up to fifty pounds.

At a hearing conducted by an ALJ to consider Brown's disability status, Brown testified that hernias, a thyroid condition, back and shoulder problems, rheumatoid arthritis, carpal tunnel, muscle weakness, repiratory and sinus issues, sickle cell anemia, and low white blood cell count prevented him from lifting more than fifteen pounds and standing or walking for more than two hours in any eight-hour period. Acknowledging his ability to buy groceries and perform housework, Brown also indicated a frequent need to lie down, difficulty climbing stairs, and tingling in his extremities.

A vocational expert also testified at the hearing. The ALJ asked the expert about a hypothetical individual of Brown's age, education, and lack of past work experience who could perform light work with frequent balancing, stooping, kneeling, crouching, crawling, climbing ramps and stairs, and occasionally climbing ladders, ropes, or scaffolds. The expert answered that such an individual could function in many occupations, including sales attendant, housekeeper, laundry sorter, and hand packer, collectively representing more than 400,000 positions nationwide. Hughes testified that any respiratory issues Brown experienced would not affect his ability to perform most of those roles, in addition to other sedentary roles.

Following the hearing, the ALJ performed the seven-step analysis for continuing entitlement to benefits under 20 C.F.R. § 416.994(b)(5). For purposes of the analysis, the ALJ identified the 2007 decision granting Brown SSI for his right inguinal hernia, residuals of left hernia surgery, and scoliosis as the comparison point decision. The 2007 decision found that Brown's residual functional capacity (his ability to do physical work despite his condition) allowed him to lift and carry less than ten pounds, and stand and walk less than two hours over an eight-hour period.

Assessing the subsequent medical evidence, the ALJ found that Brown's "hernias resolved with treatment," meaning Brown had experienced a "decrease in the medical severity of [his] impairment(s) which [were] present at the time" of the 2007 decision granting him benefits, what is referred to in medical regulations as "medical improvement." *See* 20 C.F.R. § 416.994(b)(1)(i). While Brown nevertheless still suffered from a severe impairment, the ALJ concluded that Brown's new residual functional capacity allowed him to perform "light work with occasional climbing of ladders, ropes, or scaffolds, and frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling." Acknowledging Brown's claims regarding back

3

and shoulder pain, the ALJ nonetheless concluded that those claims were largely unsubstantiated by objective medical evidence. In reaching that conclusion, the ALJ explicitly gave "reduced weight" to the findings of Dr. Austin, who had examined Brown on multiple occasions, because they were inconsistent with the opinions of other physicians, the results of the ultrasounds and sonogram, and Brown's admission that he could lift fifty pounds. The ALJ, by contrast, gave "great weight" to opinions indicating that Brown could return to work. In so concluding, the ALJ found that Brown's claims of respiratory issues, carpal tunnel, sickle-cell disease, and white blood cell count were either unsubstantiated or did not affect his ability to work.

Finally, the ALJ, consistent with the vocational expert's testimony, concluded that Brown's new residual functional capacity allowed him to perform several common jobs in the national economy. The ALJ accordingly found that Brown's disability had ended, and thus terminated his SSI. The Appeals Council denied Brown's request for review, making the ALJ's decision final.

Brown then sought review of that decision in federal court under 42 U.S.C. § 405(g). Following consent by the parties, a magistrate judge affirmed the ALJ's decision and denied Brown's motion for reconsideration. This appeal followed.

## II. ANALYSIS

Changing conditions may alter a disability recipient's entitlement to future benefits. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (per curiam). Benefits may be terminated where there has been (1) medical improvement in a claimant's impairment such that, (2) his residual functional capacity has increased, and (3) he is now able to engage in substantial gainful activity. *Id.* (citing 42 U.S.C. § 423(f)(1)). Here, the ALJ found these requirements were satisfied and terminated Brown's SSI.

1.  Brown does not dispute that he could work if the ALJ's findings regarding medical improvement and residual functional capacity were correct. But he disputes both of those findings. Unfortunately for Brown, his first argument—that the ALJ erred in its findings regarding medical improvement—has no pedigree. In the district court, Brown did not challenge the ALJ's medical improvement finding, not even when he moved for reconsideration. The district court thus "did not have an opportunity to pass on th[e] argument[], and we will not address [it]." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990)).

The lone issue for review, then, is whether Brown's residual functional capacity increased between the 2007 decision granting benefits and the ALJ's decision terminating them. We review the district court's decision reviewing the ALJ's determination de novo. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). As to that underlying ALJ decision, our review is limited. We ensure only that it (1) "is supported by substantial evidence" and (2) "made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Those standards, in many respects, are something of a tale of two cities. The substantial evidence standard, for its part, is not demanding; it requires only "relevant evidence as a reasonable mind might accept as adequate to support a conclusion" which, by all accounts, amounts to "less than a preponderance" of the evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Rogers*, 486 F.3d at 241. The standard is thus met even if the record could reasonably support the opposite conclusion. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009).

But we take a closer look at whether the ALJ's decision adhered to proper legal standards. "[I]t is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) (quoting *Wilson*

5

*v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004)). We will thus set aside an agency action that does not observe procedures required by regulation. *Id.* (citing 5 U.S.C. § 706(2)(D)).

2. Brown's challenge is more procedural than substantive. He argues that the ALJ should have given Dr. Austin's favorable opinion more, if not controlling, weight under the "treating physician rule." By way of background, federal regulations recognize three categories of physicians who offer medical opinion evidence in administrative proceedings: (1) physicians who have an ongoing treatment relationship with the claimant; (2) physicians who examine but do not have an ongoing treatment relationship with the claimant; and (3) physicians who do not examine the claimant but provide an opinion based on review of medical records. *Ealy*, 594 F.3d at 514. Intuitively, the regulations set up a hierarchy of medical opinions, affording the most deference to physicians who have treated the claimant on an ongoing basis, an intermediate amount of deference to those who personally examine but do not continuously treat the claimant, and the least deference to physicians who have merely reviewed the claimant's medical records. *Id.* (citing 20 C.F.R. § 404.1527(d)(1)).

This framework is reflected in what has come to be known as the "treating physician rule." The rule instructs that an "ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (alteration in original) (quoting *Wilson*, 378 F.3d at 544). Where a treating physician's opinion *is* contrary to substantial evidence in the record, the ALJ determines how to weigh that opinion by considering a number of factors, including the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion

6

with the record as a whole, and any specialization of the treating physician. *Id.* (citing *Wilson*, 378 F.3d at 544). The ALJ must give "good reasons" regarding its weighing of the treating physician's opinion, that is, reasons supported by the record and "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 406–07 (citing 20 C.F.R. § 404.1527(d)(2); then quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

Measured against this backdrop, the ALJ's decision passes muster. As the ALJ explained, he gave reduced weight to Dr. Austin's opinion because it was inconsistent with the record as a whole, including radiological findings, the opinions of several examining physicians, and Brown's statement that he could lift fifty pounds. This justification was sufficient for Brown to understand the disposition of his claim and to afford meaningful review of the ALJ's application of the rule. *Id.* at 407. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (holding that an ALJ did not violate the treating physician rule in discounting a treating physician's opinion because "it conflicted with other evidence in the record"). The applicable regulations require no more.

3. Brown's remaining arguments are equally unavailing. He first argues that an audio recording of his hearing undermines a key finding made by the ALJ regarding how much Brown could lift. Brown contends that the transcript says he could lift *fifty* pounds, but that the audio recording indicates he actually said *fifteen*. Brown is wrong about the transcript: it says he could lift only fifteen pounds. And he is similarly wrong that the ALJ looked to that transcript to find that Brown could pick up fifty pounds. Rather, the ALJ reached that conclusion based on Dr. Austin's notes from an examination of Brown.

Second, Brown argues that the ALJ "cherrypicked" Dr. Austin's opinion to find that Brown could now perform light work. Here again, Brown misreads the record. The ALJ read Dr. Austin's opinion for the same proposition that Brown does, namely, that Brown was unable to lift over ten pounds. The ALJ simply decided to afford the opinion less weight after finding it inconsistent with the record. This is typical evidence weighing, not cherry picking.

Finally, Brown takes issue with the ALJ's decision to afford "great weight" to the opinion of Dr. Kaplan. That "opinion" is a one-page "return to work" form, signed by Dr. Kaplan, which says that Brown is able to work without restrictions. Standing alone, one might wonder why the ALJ would afford great weight to a medical document that lacks a reasoned opinion. But that is not what happened. The ALJ stated that he credited the opinion because it was consistent with the evidence in the record as a whole. To that end, none of the private physicians (Drs. Mohan, Hyden, and Gravenor) or the state agency medical consultant physicians (Drs. Gulbenk and Robinson) could substantiate Brown's claim that he was unable to work. Two ultrasounds and an abdominal sonogram similarly failed to support Brown's claims of debilitating pain. Kaplan's "return to work" form was consistent with these findings, and disputed only by Dr. Austin. Under the circumstances, the ALJ's finding that Brown's condition had improved and his residual functional capacity had increased was thus supported by "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek*, 139 S. Ct. at 1154, even if the ALJ assigned no weight at all to Kaplan's form. Any error in that respect was therefore harmless. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535–36 (6th Cir. 2001) (finding that any error in ALJ's assignment of weight to differing medical opinions was harmless as the record provided substantial evidence for the outcome).

## III.  CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.