NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0102n.06
No. 20-5393

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 25, 2021
DEBORAH S. HUNT, Clerk

CAROLYN TIPTON,

      **Plaintiff-Appellee,**

    **v.**

COMMISSIONER OF SOCIAL SECURITY,

      **Defendant-Appellant.**

ON APPEAL FROM THE UNITED STATE DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNEESEE

BEFORE:    BATCHELDER, CLAY, and BUSH, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Carolyn Tipton appeals the district court's order upholding the Commissioner of Social Security's decision to deny Plaintiff disability benefits. Plaintiff filed a claim for disability benefits pursuant to 42 U.S.C. § 423, which an administrative law judge then denied, and the district court affirmed. Because we find that substantial evidence supports the Commissioner's decision, we affirm.

## I.  BACKGROUND

### A. Factual History

On June 6, 2013, Carolyn Tipton, Plaintiff, applied for disability benefits provided under Title II of the Social Security Act. In her application, Plaintiff states she was born in 1953, holds an associate's degree, and worked as an insurance claims examiner up until March 2013. A month prior to her application, she sought medical care for pain associated with her back, hands, hips, and left knee. Plaintiff first reported these concerns to nephrologist Dr. Bran Holt, telling him that she had noticed weight gain, edema, and leg pain but could still perform chores without slowness.

She then met with rheumatologist Dr. Richard Brackett, who documented that Ms. Tipton had fibromyalgia, undifferentiated connective tissue disease, and generalized osteoarthritis. Plaintiff rated her pain level as a 10 on a 10-point scale. At this appointment, Dr. Brackett prescribed Ms. Tipton medication to treat her fibromyalgia, and Ms. Tipton refused an injection for her left knee. Then, on April 30, 2013, Plaintiff sought care from Tracy Sherrer, APRN, who documented that Plaintiff had good attention and had no difficulty concentrating but had some difficulty sitting, walking, and standing. The nurse practitioner determined that Plaintiff had systemic lupus erythematous, multiple joint pains, lumbago, thoracic or lumbosacral neuritis, and unspecified diffuse connective tissue disease. In this appointment, Plaintiff declined physical therapy, described her pain level as 4 out of 10, and stated that she did not want to be drugged. The nurse documented that Plaintiff said she was no longer allowed to work from home and was forced to retire.

In follow-up appointments in April 2013 with her nephrologist, Dr. Holt, Plaintiff could walk with normal gait and reported taking care of her ill brother, including driving him to his cancer treatments. On May 6, 2013, Plaintiff sought care from another new doctor. She discussed having fatigue, swelling in multiple extremities, anxiety, depression, and headaches, including widespread pain that she rated a 7 out of 10. She then was diagnosed with hypertension, lupus, and goiter. That same month, Plaintiff met again with Dr. Brackett, who documented that her symptoms from previous appointments remained, including pain in her neck, wrists, hips, and knees. Plaintiff complained of fatigue, numbness in her hands and feet, and continuous joint pain. In this appointment, Dr. Brackett's evaluation showed 18 fibromyalgia tender points but normal ranges of motion in Plaintiff's joints. Plaintiff continued to follow up with nurse practitioner Tracy Sherrer, and in a subsequent appointment, described her pain as 5 out of 10. A month later, Plaintiff

told Ms. Sherrer that her treatment had done a good job of controlling her baseline pain on most days, but that she frequently experienced pain after traveling. Still, she repeatedly refused physical therapy in her appointments with Ms. Sherrer. In later appointments with Ms. Sherrer in 2015, Plaintiff documented that her pain was well controlled.

Plaintiff thereafter sought care from the same medical practitioners, where she discussed frequent pain, sometimes in the high range of 8 or 9 out of 10. Despite this, she refused to increase medication dosage or participate in physical therapy. Her reasons for refusing to do so were that she experienced side effects from the medication, including nausea and vomiting, and she had to care for her ailing brother, which constricted her time. Following her application for social security benefits in June 2013, a state agency medical consultant reviewed her records in August 2013 and concluded that Plaintiff could perform a range of light work with occasional postural limitations. A separate medical consultant came to the same conclusion in March 2014 in the Social Security Administration's reconsideration process. A month later, Dr. Brackett, Plaintiff's rheumatologist, filled out a rheumatoid arthritis questionnaire concluding that Plaintiff's disabilities essentially precluded her from performing physical work such as grasping or reaching. He additionally wrote in the file that Plaintiff's pain was so severe that she could only sit up for 2 hours and stand or walk for up to 1 hour. As to her mental condition, Dr. Brackett believed her condition impacted her attention and concentration, and that she would be unable to perform even low-stress work. Dr. Brackett stated that the conditions underlying his conclusions had been in existence for at least a year.

Intermittently, Plaintiff reported severe pain during some doctor appointments, but at other appointments she appeared to have normal strength and movement in her joints. Later in 2014, Plaintiff received lumbar injections, which she described as alleviating 50% of her pain.

Afterward, however, she received further lumbar injections that failed to alleviate her pain. She continued to receive care from Dr. Brackett for several more years, and in 2016, Dr. Brackett reported her limitations, including her inability to walk or stand for very long, to be similar to his conclusions in 2014.

## B. Procedural History

The Social Security Administration denied Plaintiff's initial application for Social Security benefits in 2013, and then denied it again after reconsideration in 2014. Plaintiff appealed, and in March 2016, she testified at an administrative hearing that she suffered from pain and swelling and could not stand for more than 10 minutes at a time, but that when she assisted her brother, she was able to cook, clean and drive him to doctor's appointments. In this same hearing, a vocational expert testified that Plaintiff had skills working in insurance claims that were transferable to other sedentary positions. Using a five-step process, the administrative law judge ("ALJ") came to the following conclusions: 1) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018; 2) Plaintiff had not engaged in substantial gainful activity since March 28, 2013; 3) Plaintiff had severe impairments, including systemic lupus erythematous, fibromyalgia, osteoarthritis, polyarthralgia, cervical and lumbar disc disease, obesity, and undifferentiated-connected tissue disease; 4) Plaintiff did not have an impairment that meets one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1; and 5) Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except no climbing ladders, ropes or scaffolds. At the conclusion of the hearing, the ALJ denied Plaintiff benefits, reasoning that Plaintiff did not have a qualifying disability, as defined by the Social Security Act, and remained capable of performing past work as an insurance claims adjuster.

Plaintiff appealed the ALJ's decision to the Appeals Council, which also denied her request. In its order, the Appeals Council determined that even as Plaintiff provided additional medical records, dated from June 2016 through July 2016, those records did not affect the decision on whether Plaintiff was disabled prior to April 2016 when the ALJ issued its opinion.

Thereafter, Plaintiff filed a claim before the district court, seeking review of the Commissioner's decision in accordance with 42 U.S.C. § 405(g). Plaintiff and Defendant subsequently filed motions for summary judgment. On February 11, 2020, a magistrate judge determined that the ALJ had not erred in declining to assign controlling weight to a particular provider of Plaintiff's, that the ALJ had done a sufficient analysis of the relevant factors, that the ALJ had not erred in assigning some weight to non-examining consultant physicians, and that the ALJ had not violated SSR 96-8p in determining Plaintiff's residual functional capacity. The district court granted Defendant's motion for summary judgment, denied Plaintiff's motion for summary judgment, and affirmed the Commissioner's decision denying Plaintiff disability benefits. Plaintiff now appeals the district court's decision.

## II. DISCUSSION

### A. Introduction

This court reviews a district court's decision in social security disability cases *de novo*. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). The Commissioner's conclusions will be affirmed unless this court determines that substantial evidence does not support the ALJ's factual findings, or, in the alternative, that the ALJ failed to apply the proper legal standard. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). A decision is supported by substantial evidence when "a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 604 (6th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In our assessment, "it is not necessary that this Court agree with the Commissioner's findings, as long as it is substantially supported in the

record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). This court defers to the ALJ's factual findings if they are supported by substantial evidence, even if the record could support a different conclusion. *Lindsley*, 560 F.3d at 604. Substantiality is based on the record taken as a whole. *Rogers*, 486 F.3d at 249.

### B. Substantial Evidence Supports the Commissioner's Decision

#### 1. Relevant Legal Principles

The Social Security Administration ("SSA") determines eligibility for disability benefits using a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process includes an analysis of 1) whether the claimant is engaged in substantial gainful activity; 2) whether the claimant has a severe, medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities; 3) whether the claimant has a severe impairment(s) that meets or equals one of the listings in the regulations and meets the duration requirement; 4) whether the claimant's impairment prevents him or her from doing his or her past relevant work; and 5) whether the claimant can make an adjustment to other work. *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The burden falls on the Plaintiff to satisfy the first four steps, and thereafter, the burden shifts to the Commissioner to demonstrate that a "significant number of jobs in the economy . . . accommodate the claimant's residual functional capacity and vocational profile." *Kyle*, 609 F.3d at 855.

Residual Functional Capacity ("RFC") is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part. 404, Subpart P, Appendix 2, § 200.00(c). The determination of the RFC is "expressly reserved for the Commissioner." *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(e)(2), 404.1546). In its assessment, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)).

Alongside the five-step process, the ALJ must follow the "treating physician" rule, where the ALJ gives greater weight to medical opinions of physicians who have treated a claimant than to opinions of non-treating physicians, because treating physicians are "most able to provide a detailed, longitudinal picture of the claimant's medical impairments." 20 C.F.R. § 404.1527(c)(2). Despite the rule's importance, the ALJ is not bound by a treating physician's opinion if there is substantial medical evidence to the contrary. *Id.* However, in every case, the ALJ must "always give good reasons" for the weight that the ALJ assigns to a treating source's opinion. *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (quoting *id.*). The ALJ's reasons "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting Soc. Sec. Rul. No.96-2p, 1996 WL 374188, at \*5 (Soc. Sec. Admin. July 2, 1996)).

### 2. Application to the Matter at Hand

We find substantial evidence to affirm the Commissioner's decision, as the ALJ's factual findings are "adequate to support [the] conclusion" that Plaintiff could still perform work. *Lindsley*, 560 F.3d at 604 (quoting *Richardson*, 402 U.S. at 401). Plaintiff argues that the ALJ improperly weighed the medical opinions in determining that Plaintiff can still perform a range of sedentary work. More specifically, Plaintiff calls into question the ALJ's rejection of the opinion of Ms. Tipton's treating physician on five issues: 1) Ms. Tipton's ability to sit, stand, and walk in an 8-hour workday; 2) her ability to use her upper extremities for manipulations; 3) the impact of symptoms on Ms. Tipton's attention and concentration; 4) how frequently Ms. Tipton would require breaks during the workday; and 5) how often Ms. Tipton would miss work due to her medical impairments.

Plaintiff argues that the ALJ impermissibly substituted her lay judgment for the opinions of medical experts; but in truth, the ALJ turned to a variety of medical sources located in the record in coming to her conclusions. While a treating physician's opinion will normally be assigned controlling weight, the ALJ must also consider other medical evidence. 20 C.F.R. § 404.1527(c)(2). For example, the record showed that most of Plaintiff's impairments were physical in nature, including her descriptions of leg and spinal pain. Her physician, Dr. Brackett, claimed that Plaintiff "could occasionally lift and carry 5-10 pounds" and "this portion of his assessment" was provided "greater weight" because "it tends to support the . . . lifting and carrying limitations based on [Plaintiff's] medically documented symptoms and signs." (ECF No. 9 at PageID # 51.) Furthermore, the ALJ gave partial weight to the opinions of state medical consultants, whose assessments reached a conclusion opposite to that of Dr. Brackett: that Plaintiff did not have severe physical disabilities. The consultants determined Plaintiff "could perform light work," but the ALJ gave this "lesser weight….because testimony and other evidence received at the hearing level shows that the claimant is more limited than determined by the State agency medical consultants." (ECF No. 9 at PageID # 50.) The ALJ factored all of these medical records into her assessment that Plaintiff's disabilities were severe enough such that she could no longer perform physically intensive work.

Although Plaintiff sought to end the ALJ's analysis after review of Dr. Brackett's opinion, governing law required the ALJ to follow the 5-step review process, under 20 C.F.R. § 404.1520(a)(4)(i-v). At Steps 1-3, the ALJ determined Plaintiff met the insured requirements of the Social Security Act, had not engaged in substantial gainful activity since March 2013, and had severe impairments including fibromyalgia and osteoarthritis. But in analyzing Step 4, which required Plaintiff to have an impairment that met one of those listed in 20 C.F.R. § 404.1520(d),

§ 404.1525, or § 404.1526, the ALJ concluded that Ms. Tipton did not meet those standards. The ALJ found that there was a lack of evidence demonstrating the requisite degree of joint, muscle, ocular, respiratory, cardiovascular, digestive, renal, hematologic, skin, neurological, or mental involvement required under listing 14.02. Plaintiff had provided no available medical evidence of an inability to ambulate effectively as described in listing 1.02A for major dysfunctions of a major peripheral weight bearing joint. Nor did the medical evidence establish the requisite evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis outlined in Listing 1.04. Of the conditions Plaintiff described, none qualified for benefits under 20 C.F.R. § 404. Thus, the ALJ's determination was supported by substantial evidence.

Then, at Step 5, the ALJ had to assess whether Plaintiff could still work despite her physical limitations. 20 C.F.R. § 404.1520(a)(4)(v). Based on the full record, the ALJ determined that Plaintiff had the residual functional capacity to work in less physically intensive positions. The ALJ declined to credit Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms," which were not consistent with the medical evidence. (ECF No. 9 at PageID # 47.) For example, an appointment with a pain consultant in April 2013 showed that she was neurologically intact and showed no spinal range of motion deficits except for the lumbar spine. A primary care appointment in July 2013 demonstrated "no focal or musculoskeletal deficits." (ECF No. 9 at PageID # 48.) A doctor's visit in October 2014 showed "normal motor strength." (ECF No. 9 at PageID # 48.) Another in March 2015 showed "no more than mild pain behaviors." (ECF No. 9 at PageID # 49.) Despite the existence of these records, Plaintiff argues that her treating physician's statement that "claimant could [only] sit two hours and stand/walk one hour in an eight-hour work day, could not complete even "low stress" work, and would be absent more than three times a month" should be controlling. (ECF No. 9 at PageID # 51.) But

the ALJ gave Dr. Brackett's assessment only partial weight because Plaintiff had "largely independent activities of daily living, grossly stable neurologic markers, and unremarkable mental status examinations." (ECF No. 9 at PageID # 51.) Indeed, other medical records also ran contrary to her treating physician's assessment. Plaintiff participated in a host of daily activities including having an ability to "prepare simple meals, perform light household chores, and shop in stores without significant issue." (ECF No. 9 at PageID # 50.) At the time of the administrative hearing, Plaintiff had never sought emergency medical care or surgical intervention for her alleged disabling impairments. Thus, the complete medical record indicated that "the claimant is less limited" than her rheumatologist suggested. (ECF No. 9 at PageID # 51.)

Based on all the evidence, the ALJ concluded that Plaintiff's residual functional capacity allowed her to participate in "jobs existing in significant numbers in the national economy," which included her "past relevant work." (ECF No. 9 at PageID # 51.) Plaintiff worked as an insurance claims adjuster until 2013, a job that required mostly sedentary responsibilities with little physical activity. After a full review, the ALJ determined Plaintiff's ability to complete past relevant work precluded her from receiving disability benefits under the statute. Because the ALJ cited the numerous grounds above in denying benefits, the ALJ provided a review that was "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (citation omitted). She gave only partial weight to Plaintiff's treating physician's opinion in light of contrary evidence contained in the record. And the ALJ gave strong weight to mental examinations demonstrating plaintiff's ability to participate in past relevant work. We find that those reasons are both sufficient and "good reasons" for denying Plaintiff disability benefits. *Hargett*, 964 F.3d at

552. Accordingly, because the ALJ's factual findings are "substantially supported in the record," the Commissioner's decision is affirmed. *Id.*

## III. CONCLUSION

For the reasons explained above, we affirm the Commissioner's decision to deny Plaintiff disability benefits.