**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0635n.06

**No. 09-6058**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Sep 30, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **DENNIS CARL BOSELEY**, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| **COMMISSIONER OF SOCIAL SECURITY** | ) | TENNESSEE |
| **ADMINISTRATION**, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SILER and SUTTON, Circuit Judges; CLELAND, District Judge.[*]

**SILER**, Circuit Judge. Dennis Carl Boseley applied for disability-insurance benefits under Title II of the Social Security Act ("SSA" or "the Act"), asserting that he is unable to work due to the partial amputation of his left thumb. The Administrative Law Judge ("ALJ") and the Social Security Appeals Council (the "Council") denied his claim for benefits, after which he sought and was denied relief in federal district court. He appeals the district court's determination and argues that the Commissioner's decision was not supported by substantial evidence based on his disagreement with the Commissioner's residual functional capacity ("RFC") finding and the Commissioner's reliance on a vocational expert's testimony.

For the reasons set forth below, we **AFFIRM** the judgment of the district court.

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. FACTS AND PROCEDURAL HISTORY

The statutory and regulatory background governing the application for disability benefits under the SSA is well established. *See, e.g.*, *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 602-603 (6th Cir. 2009). Boseley only objects to the fifth step of the analysis, *i.e.*, whether the Commissioner established Boseley's ability to do "other work." *See* 42 U.S.C. § 1382c(a)(3)(B).

### A. Boseley's Disability Claim

Boseley, a forty-five-year-old truck driver, injured his knees and sustained a partial amputation of his left thumb in a motor vehicle accident on October 31, 2002. In December 2002, he began physical therapy at the referral of his treating physician Dr. Ronald J. French, Jr. On January 27, 2003, French cleared Boseley for "Limited Duty"—work that involved a limited use of his injured hand, no heavy gripping or use of vibrating tools, and allowed for pushing, pulling, or lifting of up to five pounds. French later noted that Boseley still "ha[d] a lot of stiffness in the hand," exhibited symptoms of reflex sympathetic dystrophy ("RSD"), and "almost" did not use his left hand at all during an appointment in February 2003. Throughout the next several months, French reported "slow progress" with regard to Boseley's left-hand range of motion.

Similarly, Boseley's own statements demonstrated slow but steady improvement as to both his fine and gross motor skills. In April 2003, he told his physical therapist that he had been unable to pick up a bean. Days later, however, he reported stripping radiators with his son and noted that he could "use [his] hand better." By the end of the month he was "us[ing] [his left hand] to push a wheelbarrow." In May, he stated that his hand, while stiff, allowed him to hold a fishing pole. In June, he noted that he could hold pliers, but to use them he had to "switch hands." Around the same

2

time, his physical therapist recorded that by then he "was able to use [his left] hand normally to clip the nails on [his] right hand," and he had "made gains in [range of motion] and strength." Also in June, French charted improvements in Boseley's grip strength and range of motion.

In July, French reduced Boseley's physical therapy visits to once a week, although his notes indicated that Boseley "[s]till had a lot of stiffness" and was "unable to make a full fist." In August, the physical therapist observed that Boseley demonstrated a ten-pound increase in his left-hand grip strength. Boseley reported that he still had "trouble picking up small objects," but he also acknowledged that he could "hook up a boat a lot easier." As a result, French concluded that Boseley no longer needed physical therapy, should continue his exercises at home, and recommended that the Functional Capacity Evaluation ("FCE") be postponed for one or two months "to make sure he has reached his end point in terms of improvement." French also cleared Boseley for "medium duty" work with a thirty-pound lifting restriction and "limited use of [his left] hand/arm."

French reexamined Boseley in October, at which point Boseley was "able to bring all the fingers down into the palm [of his left hand] with the exception of the index finger where he still lack[ed] about a [centimeter]." In December 2003, French reported that Boseley had "plateaued in terms of range of motion and strength of the left hand." Specifically, French noted that while Boseley had "good grip strength on the ulnar side of his hand," he lacked "full flexion and ability to grasp with the index finger and of course the thumb." Based on his opinion that Boseley had "reached maximum medical improvement," French approved an FCE "for the left hand to assess [Boseley's] ability to work in the future."

3

Boseley participated in the FCE in January 2004. The FCE concluded that Boseley suffered from the following "Significant Deficits":

> Difficulty with waist to crown lifts due to [left] hand decreased strength. Below average coordination with [left] hand specially [sic] when working with small objects. [Left] hand decreased grip strength and tip pinch.

The FCE Grid tracked Boseley's grip strength and tip pinch, and it also noted that he could engage in activity involving coordination with his left hand for just one to five percent of the work day. After reviewing the FCE, French was unable to opine as to whether Boseley could return to his job as a truck driver, but he did state that Boseley "has reached maximum medical improvement and he needs to be evaluated for a return to some sort of employment." Finally, after an April 2004 follow-up appointment, French concluded that Boseley "can drive and . . . [has] good functional use of the left hand within the stated guidelines [i.e. a fifty-pound permanent lifting restriction]." In January 2005, Dr. Joseph Johnson examined Boseley at the request of the Tennessee Disability Determination Services. He concluded that Boseley's left-hand range of motion was "nearly normal," and his left-hand motor strength was a "4/5." He noted that Boseley's ability to make "[r]apid alternating movements in the left hand" was "slightly slow due to tendinous stiffness." That same month, a physician reviewed Boseley's medical records for the Social Security Administration in order to determine his RFC. He indicated that Boseley could stand, walk, and sit six hours in an eight-hour workday, could lift fifty pounds occasionally and twenty-five pounds frequently; and had no push or pull limitations in his upper extremities. Furthermore, he found that Boseley suffered from no limitations in reaching and feeling.

In 2006, Boseley submitted to a vocational evaluation by Mark Boatner. Specifically, Boatner was retained "to administer a standardized measure of [Boseley's] finger dexterity" and "to get insight into [Boseley's] capacity for performing daily activities and for return to his regular job of tractor-trailer driver." After administering a Purdue Pegboard Test, Boatner noted that Boseley performed "poor[ly]" as to both his right and left hands and concluded that Boseley "does not possess the functional dexterity or fingering ability to successfully work in basic assembly jobs, production occupations, maintenance or service occupations." Moreover, due to French's opinion that Boseley would likely be absent from work one day per month, Boatner concluded that Boseley was not employable for any entry-level unskilled jobs. French later checked "yes" on a letter from Boseley's lawyer, indicating that he agreed with these findings.

## B. Procedural Background

Boseley applied for disability-insurance benefits in October 2004. At a hearing before an ALJ in 2006, Boseley testified that he was right handed and that he had not worked since his accident. He stated that he had only applied for positions as a truck driver and had not expanded his job search to other fields. He indicated that his left thumb caused him pain, for which he took over-the-counter medicine.

The ALJ asked JoAnn Bullard, a vocational expert, to evaluate the ability to work of a hypothetical individual with Boseley's prior experience, who was limited to no more than 30 pounds of lifting on an occasional basis and assuming the following additional limitations:

> I want you to assume, as well, that I might find him to be precluded from anymore than frequent climbing of stairs and ramps, stooping or bending from . . . the waist to the floor. He would be precluded from any climbing of ladders, ropes and

> scaffolds, kneeling, stooping, crouching or crawling *and he would be precluded from any heavy gripping with his left, upper extremity.* . . . Under that hypothetical, would there be jobs which he could perform in the area?

Bullard responded in the affirmative, and stated that Boseley was capable of the following "light, unskilled occupations" available in the local and national economies: Cashier II, a parking lot attendant, or a textile checker. The ALJ then changed the hypothetical slightly to prohibit "any more than occasional gripping and manipulating with [the] left upper extremity," which would preclude more jobs than the more general prohibition against "any heavy gripping." In that case, Bullard opined that Boseley would be "precluded from about 97.5 percent of occupations in the [Dictionary of Occupational Titles ('DOT')]." She clarified that the availability of "light, unskilled occupations" would not be affected if Boseley was "limited to only occasional reaching or using his [left] hand for . . . something to push against."

The ALJ found that Boseley was not disabled. On appeal, the Council affirmed. In only one respect did it differ from the ALJ's decision: it noted that the ALJ "did not address Dr. French's endorsement of the limitations contained in [Boatner's 2006] assessment." However, because the Council concluded that the evidence did not support the limitations listed in the assessment, it "assign[ed] little weight" to Dr. French's 2006 opinion.

## II. STANDARD OF REVIEW

We review de novo the decisions of the district court in social security cases. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). We will affirm the Commissioner unless the ALJ failed to apply the correct legal standards or made findings of fact unsupported by

substantial evidence in the record.  42 U.S.C. § 405(g); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

### III.  ANALYSIS

### A.  RFC Finding

Boseley first claims that the RFC finding was not supported by substantial evidence. Specifically, he argues that the Commissioner "offered no reason at all for rejecting" the results of the Purdue Pegboard Test and the notation in the 2004 FCE that Boseley could only engage in activity involving coordination with his left-upper extremity for one to five percent of the work day (the "FCE finding" or the "1-5 notation").

We do not read the Commissioner's failure to refer to the FCE notation to mean that it "reject[ed]" it.  Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (per curiam).

The 2004 FCE found that Boseley had "[h]igh abilities in all lifting tasks, push and pull, right hand carry and walking."  In discussing Boseley's left hand, however, the evaluation stated that "there has been good recovery . . . [and] significant progress in strength and [range of movement] on [left] hand and fingers."  It concluded that Boseley's "grip strength and [range of motion]" was at a "functional level," but that he must be restricted from using his left hand for "heavy lift[ing]." The existence of one notation regarding left-hand coordination on the FCE grid does not necessarily contradict the FCE's conclusion that the only "permanent restriction" on Boseley's left hand was to avoid "heavy lift[ing]."  Upon reading the entire FCE report, reasonable minds could conclude, as

7

did the Council, that it "revealed only below average coordination with the left hand with decreased grip strength and tip pinch." The Commissioner considered and impliedly resolved any internal conflict within the FCE. *See Kornecky*, 167 F. App'x at 507-08.

Boseley argues that the Commissioner should not have rejected Boatner's report and the Purdue Pegboard Test. The test revealed that Boseley performed three standard deviations below normal on testing of his left hand, both hands, his right and left hands combined, and assembly. Boatner concluded that Boseley would not be able to perform any type of job requiring reaching, handling, and dexterous use of the hands, and that he did not possess the "functional dexterity or fingering ability to successfully work in basic assembly jobs, production occupations, maintenance or service occupations." As the ALJ noted, Boatner only saw Boseley on "one occasion." Boatner also admitted that he reviewed the FCE but had not otherwise read Boseley's medical records, and that he was retained by Boseley's attorney to determine whether Boseley could return to his job as a truck driver.

The Commissioner was not persuaded by this evidence, and his decision to assign it little weight is reasonable, especially when weighed against the 2004 FCE, Johnson's 2005 examination, and French's opinion in 2004 that Boseley retained good functional use of his hand provided that he lift no more than fifty pounds. Moreover, the Commissioner considered the fact that French checked the box indicating that he agreed with Boatner's 2006 report. He concluded that the totality of the medical evidence did not support Boatner's conclusions.

Substantial evidence in the record supports the RFC restriction against constant heavy gripping. French's 2004 opinion was supported by his own treatment of Boseley over several years

and his range-of-motion and grip-strength measurements. The physical therapist also tracked Boseley's progress and noted his objective improvements as well as his subjective comments regarding his abilities to fish, strip radiators, push a wheel barrow, and cut his nails. Similarly, the FCE as a whole reasonably supported French's conclusion, as discussed. In 2005, Johnson tested Boseley's left-hand range of motion and determined that it was "nearly normal." He also concluded that Boseley's left-hand motor strength was a "4/5." Finally, French's endorsement of Boatner's report was not accompanied by any explanation from which the Commissioner could reconcile it with French's earlier prognosis. Thus, the Commissioner reasonably discounted this later opinion where the record evidence did not support Boatner's underlying conclusions. Substantial evidence in the record as a whole supports the Commissioner's decision to credit the aforementioned evidence despite some evidence to the contrary in the record.

## B. Vocational Expert

Boseley also argues that the first hypothetical posed to Bullard at the hearing did not accurately portray his limitations and thus the Commissioner's conclusion that he could perform light work was not supported by substantial evidence. "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy*, 594 F.3d at 516.

The ALJ's first hypothetical assumed the claimant would be precluded "from any heavy gripping with his left, upper extremity." Boseley attacks the restrictions stated in this hypothetical as not being representative of his actual limitations. In his view, his limitations are more consistent

9

with the second hypothetical, which assumed that the claimant would be precluded from "any more than occasional gripping."

We disagree. The ALJ's first hypothetical accurately summarized Boseley's limitations on any heavy gripping, as discussed *supra*, and the conclusion, based on Bullard's testimony, that he was "capable of performing a significant range of light work, as defined in 20 C.F.R. [§] 404.1567," is supported by substantial evidence.

We have before affirmed the determination that a claimant's "right hand and arm enable[d] him to perform a number of jobs which exist in substantial numbers in the national economy." *Odle v. Sec'y of Health and Human Svcs.*, 788 F.2d 1158, 1161 (6th Cir. 1985). Boseley is right handed and his right hand is fully functional. The record also shows that he could complete certain tasks with his left hand, even though he was not capable of "any heavy gripping." Finally, when cross-examined regarding Boseley's manual dexterity, Bullard stated that the availability of light work would not be negatively impacted if Boseley was "limited to only occasional reaching or using his [left] hand . . . just as . . . something to push against."

AFFIRMED.