RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0027p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

EDNA K. NAPIER,

          *Plaintiff-Appellant,*

    *v.*

COMMISSIONER OF SOCIAL SECURITY,

          *Defendant-Appellee.*

No. 24-5494

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:22-cv-00318—David L. Bunning, District Judge.

Decided and Filed:  February 7, 2025

Before:  BATCHELDER, BUSH, and BLOOMEKATZ, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Caeden Sehested, Julie Atkins, OLINSKY LAW GROUP, Syracuse, New York, for Appellant.  Frank D. Tankard, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, Charles P. Wisdom, Jr., Cheryl Morgan, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

───────────────

## OPINION

───────────────

BLOOMEKATZ, Circuit Judge.  After the Social Security Administration denied her application for disability insurance benefits, Edna Napier challenged that decision in district court.  She argued that the administrative law judge (ALJ) erred in denying her benefits by finding that her mental impairments were mild, rather than severe, and by failing to account for those mental impairments in assessing her residual functional capacity.  The district court

affirmed. Because the ALJ complied with the applicable procedures and his findings were supported by substantial evidence, we affirm.

**BACKGROUND**

Edna Napier worked as a cashier at a grocery store from 2000 to 2006 and as a certified nursing assistant at an adult day care facility from 2007 to 2016. In 2016, Napier found herself unable to work because she was in severe pain caused by several physical conditions and was suffering from depression and anxiety.

Napier filed for disability insurance benefits. In 2018, the Social Security Administration denied Napier's application. In a hearing decision, an ALJ found that although Napier had severe physical impairments, including degenerative disc disease, osteoarthritis, and obesity, she was not disabled because she could still perform her past work as a cashier.

In December 2019, Napier filed a new application for disability insurance benefits and supplemental security income. She stated in her application that she had been unable to work since December 2018 because of several physical conditions, including degenerative disc disease, severe osteoarthritis, migraines, severe leg pain, and asthma, along with mental conditions including depression and anxiety.

After holding an evidentiary hearing, an ALJ issued a written decision concluding that Napier was not disabled under the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423(d). To arrive at that determination, the ALJ performed the Social Security Act's required "five-step sequential evaluation process" for adjudicating claims of disability. *See* 20 C.F.R. § 404.1520(a)(4); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). The claimant bears the burden of proof at each of the first four steps in that process; the burden shifts to the Commissioner only at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). If the ALJ finds at any of the five steps that the claimant is not disabled, the ALJ denies the claim. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

At the first step, the ALJ determines whether the claimant is engaged in "substantial gainful activity"—in other words, working—at the time they apply for disability benefits.

20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is, the ALJ will find that they are not disabled.  *Id.*  At the second step, the ALJ considers whether the claimant has a "severe" impairment—that is, an impairment that "significantly limits" the claimant's "physical or mental ability to do basic work activities."  *Id.* § 404.1520(a)(4)(ii), (c).  The ALJ will find that a claimant is not disabled unless the claimant can show such an impairment.  *Id.*  At step three, if the claimant has an impairment that is on the Commissioner's list of impairments presumed to be severe enough to warrant a finding of disability, the ALJ will find the claimant disabled without any need for further inquiry.  *Id.* § 404.1520(a)(4)(iii); *see also Barnhart*, 540 U.S. at 24–25.  At step four, the ALJ examines a claimant's "residual functional capacity"—the claimant's ability to work, despite their limitations—and their "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv).  If the ALJ determines that the claimant is still capable of doing their past relevant work, notwithstanding their limitations, the ALJ will find that the claimant is not disabled.  *Id.*  Finally, if the ALJ has determined that the claimant is not capable of resuming their past relevant work, the ALJ must find the claimant disabled unless the Commissioner can demonstrate that the claimant can resume "other work" that is available in the national economy.  *Id.* § 404.1520(a)(4)(v); *see also Heston*, 245 F.3d at 534.

Here, the ALJ found that Napier was not disabled at step four.

*Step 1*.  At step one, the ALJ found that Napier had not engaged in substantial gainful activity since December 2018, the date at which Napier stated that she became disabled.  20 C.F.R. § 404.1520(a)(4)(i).

*Step 2*.  At step two, the ALJ found that three of Napier's physical conditions—degenerative disc disease, osteoarthritis, and obesity—qualified as severe impairments.  *Id.* § 404.1520(a)(4)(ii).  The ALJ also found that Napier's mental impairments—anxiety and depression—did not qualify as severe.  The ALJ evaluated the severity of Napier's mental impairments in accordance with 20 C.F.R. § 404.1520a, which requires an ALJ to rate the degree to which a claimant's impairments limit their ability to function in "four broad functional areas"—(1) "[u]nderstand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself."  *Id.* § 404.1520a(c)(3); *see also Beaty v. Comm'r of Soc. Sec.*, No. 19-6310, 2020 WL 6821061, at *3

(6th Cir. Sept. 17, 2020).  The ALJ found that Napier had "no limitations" in interacting with others and "no more than mild limitations" with respect to the other three broad functional areas. ALJ Decision, R. 8, PageID 45–46.  As part of this determination, the ALJ considered the opinions of several psychologists who had examined Napier.

Before turning to step three, the ALJ noted that the "residual functional capacity assessment" laid out later in step four of his decision "reflect[ed] the degree of limitation" that the ALJ "ha[d] found in the . . . mental function analysis." *Id.* at PageID 48.

*Step 3*.  At step three, the ALJ stated that Napier's severe physical limitations did not meet or equal the severity of one of the impairments listed at 20 C.F.R. Part 404, which would have meant Napier qualified as disabled without the need for any further analysis.  *See* 20 C.F.R.§ 404.1520(a)(4)(iii).  So the ALJ proceeded to the fourth step.

*Step 4*.  At the fourth step, *see id.* § 404.1520(a)(4)(iv), the ALJ concluded that Napier retained the "residual functional capacity" to perform her past relevant work as a cashier, ALJ Decision, R. 8, PageID 49, 61.  He accordingly found that Napier was not disabled under the Social Security Act.  The ALJ noted that in arriving at this determination, he had "considered all symptoms." *Id.* at PageID 49.  Because the ALJ found that Napier was not disabled at step four, he rejected her application and did not proceed to step five.

Napier challenged the ALJ's decision in federal district court, arguing that the ALJ erroneously concluded that Napier's mental impairments were not severe and failed to explain how those mental impairments played into his residual functional capacity analysis.  The district court affirmed the ALJ's decision, and Napier timely appealed.

**ANALYSIS**

Our review of the ALJ's decision is "limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance," *id.* (citation omitted); it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*,

587 U.S. 97, 103 (2019) (citation omitted). Even when an ALJ's decision is supported by substantial evidence, we will reverse the decision if we find that the ALJ failed to follow the applicable procedural regulations. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016).

On appeal, Napier challenges the ALJ's treatment of only her mental impairments. She argues that the ALJ violated applicable procedural regulations and that the ALJ's decision was unsupported by substantial evidence. Napier's challenges are unpersuasive.

## I.      Severity of Napier's Mental Impairments

Napier argues that the ALJ erred in concluding at step two that her mental impairments were not severe. We disagree.

Substantial evidence supports the ALJ's determination that Napier's mental impairments were not severe. First, as the ALJ noted, when Napier was directly asked by her attorney which of her "main symptoms" were causing her to be "unable to work," Napier pointed only to her physical symptoms and did not mention her depression or anxiety. Hearing Tr., R. 8, PageID 78. From this testimony, the ALJ appears to have reasonably inferred that Napier did not consider herself to be severely affected by her mental impairments. Second, the ALJ emphasized that Napier's treatment history with respect to her anxiety and depression was quite limited; although Napier testified that she had been prescribed antidepressants by a medical (not mental) healthcare provider, Napier had had no history of inpatient or outpatient mental health treatment.[1] And finally, the ALJ carefully outlined the findings of several psychologists who examined Napier, including Dr. Stiles, Dr. Whitehead, and Dr. Palmer, and explained why those findings demonstrated that Napier's mental impairments were not severe. The ALJ noted, for example, that the evidence showed that Napier's mental impairments could be controlled using medication. We think this evidence is sufficient that a "reasonable mind might accept" it as "adequate to support" the ALJ's conclusion that Napier's mental impairments were not severe. *Biestek*, 587 U.S. at 103 (citation omitted).

---

[1]Napier argues that the ALJ erred in relying on her lack of mental health treatment, explaining that she could not afford treatment because of her "financial constraints." Appellant Br. at 12. But Napier does not point to any evidence in the record demonstrating those financial constraints.

Napier's arguments do not persuade us that the ALJ's conclusion was unsupported by substantial evidence or that the ALJ violated applicable regulations. Napier first contends that the ALJ erred in relying on her ability to perform everyday activities like reading and paying bills to conclude that her mental impairments caused her "no more than mild" limitations. She emphasizes that the applicable regulations require the ALJ to determine the extent to which a claimant's mental impairments affect the claimant's ability to function on a "*sustained basis.*" 20 C.F.R. § 404.1520a(c)(2) (emphasis added). In Napier's view, her personal activities—which she characterizes as "sporadic"—do not shed light on what work she can perform on a sustained basis. Appellant Br. at 11.

The ALJ, however, did not rely heavily on Napier's ability to perform these activities in determining whether her mental impairments affected her ability to function on a sustained basis. True enough, in prior cases we have explained that an ALJ may not rely on a claimant's "household and social activities" to find that a claimant's mental impairments are not severe unless the ALJ can "establish" that the claimant can perform those activities on a "sustained basis." *Miller*, 811 F.3d at 838. But we have found this kind of reliance on a claimant's daily and sporadic activities to be problematic only when the ALJ relied *too heavily* on those activities to conclude that a claimant's mental impairments were not severe, notwithstanding contrary record evidence. In *Gayheart v. Commissioner of Social Security*, for example, we concluded that an ALJ's focus on "isolated pieces of the record"—specifically, the claimant's ability to visit family members and go grocery shopping—was an "insufficient basis for" according "little weight" to the record evidence suggesting that the claimant's mental impairments were severe. 710 F.3d 365, 377–78 (6th Cir. 2013); *see also Miller*, 811 F.3d at 838 (holding that an ALJ's reliance on the claimant's "household and social activities" was an "insufficient basis to determine" that the claimant "could conduct work activities on a sustained basis").

The ALJ did not make such an error here. The ALJ carefully analyzed the entirety of the record evidence regarding Napier's ability to function, using Napier's statements regarding her activities only as one factor among many. As we have noted, the ALJ first carefully reviewed the medical evidence regarding Napier's mental impairments and explained that it appeared that those impairments were not severe and could be controlled with medication. Turning to the

extent to which Napier was limited in the "four broad functional areas" that ALJs must assess, *see* 20 C.F.R. § 404.1520a(c)(3), the ALJ then evaluated Napier's claims regarding her functional limitations, using Napier's everyday activities as one way to evaluate the credibility of her assertions. With respect to Napier's ability to concentrate, for example, *see id.*, the ALJ noted that although Napier claimed that she had difficulty concentrating, she also stated that she reads daily. And the record also demonstrated that Napier had never shown an "inability to complete testing that assesses concentration and attention." ALJ Decision, R. 8, PageID 46. This is not a case, in other words, where substantial record evidence pointed towards the claimant having a severe impairment, and the ALJ nonetheless chose to ignore that evidence and conclude that the claimant's impairment was not severe based on the claimant's ability to do sporadic everyday activities. *See Gayheart*, 710 F.3d at 377–78; *Miller*, 811 F.3d at 838. Here, considering that substantial other record evidence indicated that Napier's mental impairments were not severe, the ALJ did not err in including evidence regarding the activities Napier could perform in its analysis.

Next, Napier argues that the ALJ failed to follow the applicable regulations when evaluating the opinion of Dr. Larry Palmer, a psychologist who examined Napier and opined that she had certain moderate (not mild) mental limitations. Those regulations require an ALJ to "articulate" how "persuasive" the ALJ finds "all of the medical opinions." 20 C.F.R. § 404.1520c(b). In determining the persuasiveness of a medical opinion, the ALJ is required to consider several factors, including "[s]upportability"—that is, how a medical opinion comports with the objective medical evidence in the record. *Id.* § 404.1520c(c)(1). Napier contends that the ALJ violated these requirements both by failing to address why Dr. Palmer's opinion was less persuasive than the opinions of two other psychologists, Dr. Jennifer Stiles and Dr. Robert Paul—who opined that Napier had only mild limitations—and by failing to assess the supportability factor with respect to Dr. Palmer's testimony.

Napier's assertions that the ALJ failed to follow the required procedures for assessing medical opinions are belied by the record. The ALJ explicitly noted that Dr. Palmer's opinion was less persuasive than the opinions of Dr. Stiles and Dr. Paul because the latter doctors' findings were "consistent with and supported by," among other things, the fact that Napier had

no history of inpatient or outpatient mental health treatment. ALJ Decision, R. 8, PageID 47. And in the same paragraph regarding the persuasiveness of the medical opinions in the record, the ALJ elaborated that certain aspects of Dr. Palmer's opinion appeared to be "internally unsupported" by other findings in the record. *Id.* The ALJ, in other words, explicitly explained why it found Dr. Palmer's medical opinion less persuasive than others and addressed the supportability factor. *See* 20 C.F.R. § 404.1520c(c)(1).

Finally, Napier argues that the ALJ's conclusions regarding Napier's mental impairments were erroneous because the ALJ mischaracterized Dr. Palmer's findings. Napier argues that in stating that Napier's medical examination findings were "relatively benign," the ALJ ignored some of Dr. Palmer's findings, including that Napier was estimated "to be functioning in the borderline range of general intelligence" and had a history of suicidal thoughts. We do not read the ALJ to have impermissibly mischaracterized Dr. Palmer's report. Although the ALJ did not list out each of Dr. Palmer's individual remarks about Napier's symptoms, he summarized Dr. Palmer's report, explicitly recognized Dr. Palmer's belief that Napier had more than mild limitations, and explained why Dr. Palmer's findings were less persuasive than the findings of other doctors who examined Napier. And, as we have already noted, substantial evidence supports the ALJ's finding that Napier had no more than mild mental limitations. We may not reweigh those findings. Rather, as long as the ALJ's findings were, as here, supported by substantial evidence, we may not second-guess them, even if substantial evidence would support the opposite conclusion. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

We hold that the ALJ's conclusion that Napier's mental impairments were not severe was procedurally proper and supported by substantial evidence.

## II.     Residual Functional Capacity Analysis

Napier argues that the ALJ's residual functional capacity analysis violated applicable regulations requiring the ALJ to consider "all of [the claimant's] medically determinable impairments" of which the ALJ is aware, "including [the claimant's] medically determinable impairments that are not 'severe.'" *See* 20 C.F.R. § 404.1545(a)(2) (citation omitted). Napier contends that the ALJ inappropriately ignored her mild, non-severe mental impairments

in formulating her residual functional capacity and determining that she could perform light work.

The record clearly demonstrates that the ALJ adequately accounted for Napier's mental impairments in formulating her residual functional capacity.  In explaining the required five-step process for addressing Napier's application, the ALJ noted that in determining Napier's residual functional capacity, he was required to "consider all of the claimant's impairments, including impairments that are not severe."  ALJ Decision, R. 8, PageID 43.  After concluding that Napier's mental impairments were no more than mild, the ALJ explicitly stated that his "residual functional capacity assessment used at steps 4 and 5" later in his decision reflected the "degree of limitation" that the ALJ had found in the "mental function analysis."  *Id.* at PageID 48.  And the ALJ later noted that in concluding that Napier had the "residual functional capacity to perform light work," he had "considered all symptoms."  *Id.* at PageID 49.  We have previously reasoned that, depending on the context, similar statements can be sufficient to demonstrate that the ALJ adequately considered all of a claimant's medical impairments in formulating a residual functional capacity analysis.  *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020).  Though there may be occasions where, in context, similar statements would be insufficient, this is not such a case.  Considering the substantial evidence supporting the ALJ's findings that Napier's limitations were no more than mild and the ALJ's repeated statements that it took all of Napier's limitations into account, we hold that the ALJ adequately accounted for Napier's limitations in the residual functional capacity analysis.

**CONCLUSION**

We affirm the district court's judgment.