NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0268n.06

Case No. 26-5022

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 18, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| KENETT GREGORY, | ) | ON APPEAL FROM THE |
|     Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF KENTUCKY |
|  | ) |  |
| COMMISSIONER OF SOCIAL SECURITY, | ) |  |
|     Defendant-Appellee. | ) | O P I N I O N |
|  | ) |  |
|  | ) |  |

Before: SUTTON, Chief Judge; McKEAGUE and BUSH, Circuit Judges.

McKEAGUE, Circuit Judge. Kenett Gregory applied for social security disability insurance benefits. The administrative law judge (ALJ) tasked with reviewing her claim found a particular medical opinion supporting her application unpersuasive. Because the ALJ complied with regulatory requirements in disregarding that opinion, and his conclusion is backed by substantial evidence, we **AFFIRM**.

**I.**

Kenett Gregory worked at a gas station, rising through the ranks from cashier to store manager. Unfortunately, a work-related back injury stymied her career. Since then, she has developed various physical ailments. And she suffers from various mental health conditions too,

including depression, anxiety, and attention deficit disorder. As a result, Gregory applied for social security disability insurance benefits. But the Social Security Administration denied her claim.

Unsatisfied, Gregory sought a hearing before an ALJ. And the ALJ considered an extensive record of Gregory's medical history. But here the parties quarrel over just one medical opinion: a consultative examination report prepared by Dr. Jennifer Fishkoff about Gregory's mental health. After examining Gregory, Fishkoff noted that Gregory was "clear and coherent," could recall information, had goal-directed thoughts, and was "friendly and cooperative." R. 6, PageID 807-08, 811. But Fishkoff also observed that Gregory's "mood was moderately to severely depressed" and "her affect was flat." *Id.*, PageID 808. And the report explained that Gregory "endorsed most items of depression and anxiety" when presented with a symptom checklist. *Id.* Beyond that, Gregory relayed "feelings of guilt, hopelessness, helplessness[,] and low self-esteem." *Id.* And she complained of recurrent panic attacks, "racing thoughts," fatigue, difficulty concentrating, restlessness, irritability, and forgetfulness. *Id.*

Putting those pieces together, Fishkoff determined that Gregory's mental health conditions limited her ability to attain employment. She noted that Gregory's "ability to tolerate frustration, conform to social standards[,] as well as maintain employment [were] severely impaired." *Id.*, PageID 812. Fishkoff explained that Gregory would likely be unable "to understand, retain, and follow instructions as would be required over an eight-hour workday" or "perform simple and repetitive tasks." *Id.* And she opined that Gregory did "not appear to be capable of tolerating the stress and pressures associated with day-to-day work activity." *Id.*

The ALJ saw things differently. He decided that Gregory's mental health conditions caused no more than "minimal limitation in [her] ability to perform basic work activities." *Id.*, PageID 40.

In reaching that conclusion, the ALJ disregarded Fishkoff's opinion. To the ALJ's mind, the limitations identified by Fishkoff were unconvincing because they "relied largely on [Gregory's] subjective complaints" and were "inconsistent" with the majority of medical evidence in the record, which showed "largely unremarkable mental status findings." *Id.* And without those limitations, the ALJ determined that neither Gregory's physical nor mental impairments prevented her from finding work in a light work position. So, he upheld the denial of Gregory's benefits application.

Unsatisfied still, Gregory sought judicial review. She argued that the ALJ erred in failing to consider Fishkoff's proposed limitations in determining whether she was disabled. The Magistrate Judge, though, concluded that the ALJ "properly determined that [] Fishkoff's opinion [was] unpersuasive." R. 16, PageID 1639. Over Gregory's objection, the district court adopted the report and recommendation and entered judgment for the Commissioner. Gregory appealed.

**II**.

Our review of the ALJ's decision is limited. We ask only whether the ALJ "applied the correct legal standards and whether [his] findings are supported by substantial evidence." *Norris v. Comm'r of Soc. Sec.*, 139 F.4th 541, 545 (6th Cir. 2025) (citation modified). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation modified). That requires "more than a scintilla of evidence but less than a preponderance." *Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1004 (6th Cir. 2025) (citation modified). With only that minimal evidentiary bar to clear, we affirm an ALJ's decision so long as his "findings are

reasonably drawn from the record . . . even if [the] evidence could support a contrary decision." *Norris*, 139 F.4th at 545 (citation modified).

## III.

Against that deferential backdrop, we see no error in the ALJ's decision. To qualify for disability insurance benefits, a claimant must be disabled. *See* 42 U.S.C. § 423(a)(1)(E). In this context, that means the claimant can't "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" because those impairments are of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § (d)(1)(A), (d)(2)(A).

An ALJ walks through a five-step process to determine if a claimant meets those criteria. *See* 20 C.F.R. § 404.1520(a)(4). Among other things, the ALJ must define the claimant's residual functional capacity, that is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 399 (6th Cir. 2018) (citation modified); 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); 20 C.F.R. § 404.1545(a)(1). Said differently, the residual functional capacity inquiry asks what a claimant "can and cannot do" because of her physical and mental impairments. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

That is where Gregory focuses her argument. She claims that the ALJ went awry in defining her residual functional capacity without considering the limitations identified in Fishkoff's report.

To be sure, when defining a claimant's residual functional capacity, an ALJ is required to consider "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3); *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012). And an ALJ must "'articulate' how 'persuasive' the ALJ finds 'all of the medical opinions.'" *Napier*, 127 F.4th at 1006 (quoting 20 C.F.R. § 404.1520c(b)). In doing so, the regulations instruct an ALJ to consider several factors. 20 C.F.R. § 404.1520c(c). But first among them are supportability and consistency. *Id.* § 404.1520c(b)(2). On the supportability front, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] . . . the more persuasive the medical opinion[] . . . will be." *Id.* § 404.1520c(c)(1). Consistency asks whether the opinion coheres "with the evidence from other medical sources and nonmedical sources." *Id.* § 404.1520c(c)(2). To pass muster, the ALJ need only explain "how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* § 404.1520c(b)(2).

The ALJ's decision here does just that. Starting with supportability, the ALJ acknowledged that some first-hand observations supported Fishkoff's conclusions. But on balance, the ALJ explained that Fishkoff's opinion relied "largely on the subjective complaints of the claimant." R. 6, PageID 40. And Fishkoff's assessment, no doubt, relied on Gregory's report of her own symptoms. That's good reason to question the supportability of Fishkoff's report. *See, e.g.*, *Dolt v. Comm'r of Soc. Sec.*, No. 25-5364, 2026 WL 1092169, at *3 (6th Cir. Mar. 26, 2026) (finding substantial evidence that supportability was lacking when "ALJ found that [medical provider's] statements regarding [claimant's] work-related limitations were based primarily on [claimant's] own description of his symptoms"). On the consistency front, the ALJ reasoned that Fishkoff's

conclusion as to Gregory's condition stood at odds with other record evidence. And the ALJ (and Magistrate Judge in turn) pointed to dozens of supporting records, none of which articulate the type of severe limitations identified by Fishkoff. One, for example, recognizes Gregory's anxiety and depression but describes those conditions as "stable." R. 6, PageID 976. Others note no anxiety or depression. *See, e.g.*, *id.*, PageID 396, 942. So, in the end, the ALJ did exactly what he was supposed to do: he addressed both the supportability and consistency of Fishkoff's report, and, in doing so, relied on evidence that "a reasonable mind might accept as adequate to support [his] conclusions." *Biestek*, 587 U.S. at 103 (citation modified).

*Hopkins v. Comm'r of Soc. Sec.*, No. 23-5696, 2024 WL 3688302 (6th Cir. Apr. 9, 2024) confirms that conclusion. There too, an ALJ disregarded a report prepared by Fishkoff because it relied "heavily on [the claimant's] subjective reports" and was "not consistent with the other evidence of record," which pointed toward a less severe prognosis. *Id.* at *3-4. Confronted with those explanations, we were satisfied that the ALJ's persuasiveness determination was supported by substantial evidence. *Id.* And we see no reason to reach a different conclusion here. Indeed, although Commissioner relied on *Hopkins* in its brief, Gregory makes no effort to explain why we should depart from its analysis.

Pushing back, Gregory argues that the ALJ failed to build "a logical bridge between the evidence and conclusion." Appellant's Br. at 10. And she relies on a handful of non-binding cases where ALJs offered insufficient explanations. *See, e.g.*, *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (remanding for additional explanation when "ALJ failed to even mention [medical professional's] assessment, let alone explain why he apparently rejected it"); *Indoranto*

*v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) ("Notably absent from the ALJ's order is a discussion of how [the claimant's] headaches and blurred vision affected her ability to work.").

No such insufficiency exists here. True, Gregory identified medical records that point in her direction. But there is no indication the ALJ disregarded that type of evidence. *See, e.g.*, R. 6, PageID 39 ("The claimant's records contained limited outpatient counseling. . ."). Instead, he simply concluded that "the overall medical evidence of record . . . shows largely unremarkable mental status findings." R. 6, PageID 40. The ALJ did not need to say more. *Cf. Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.").

Finally, Gregory stresses that "[n]othing within 20 C.F.R. § 404.1520c requires all evidence to be entirely consistent." Appellant's Reply Br. at 3. Even so, the ALJ's persuasiveness finding is "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 648 (6th Cir. 2013) (citation modified); *Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *4 (6th Cir. Sept. 28, 2023). As explained above, there is ample evidence to support the ALJ's conclusion.

**IV.**

Because the ALJ did all that applicable regulations require, and his findings are backed by substantial evidence, we **AFFIRM**.